EX PARTE ELVIRA JUANA MANUELA JOAQUINA GARCÍA FERNÁNDEZ, Petitioner and Appellee; JOSEFA AGUAYO CASALS, Intervener and Appellant.

No. 5812. Argued November 28, 1932.—Decided December 21, 1932.

*Tous Soto & Zapater* for appellant. *Guerra Mondragón* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case was submitted for decision on the merits on the 17th of June last. The appellee in her brief, in addition to thoroughly discussing the appeal on the merits, asked for its dismissal on the ground that there was no duly authenticated copy of the statement of the case. After a careful consideration of this preliminary question the same was decided in favor of the appellee, and the appeal was accordingly dismissed (*ante,* p. 1).

The appellant filed a motion seeking a reconsideration of that decision and the reinstatement of the appeal, which motion was accompanied by certificate showing the approval of the statement of the case by the trial judge.

The motion was set for hearing on the 28th of November last. Both parties appeared and were heard and it was clearly understood that, should the court grant the reconsideration, the case would be decided on the merits without further hearing.

The reconsideration is sought on two grounds: First, that the statement of the case that was made a part of the transcript was unnecessary, because the authenticity of the facts on which the judgment appealed from was based appeared from the pleadings themselves; and second, because even though such were not the case, the certificate which was exhibited with the motion cured the defect upon which the dismissal was based.

Perhaps the appellant's first ground is correct. We do not believe that it is necessary to determine this point. The certificate removes all doubt as to the authenticity of the statement. Inasmuch as nothing new is involved, but rather the confirmation of what already appeared from the minutes of the court incorporated in the record, the delay in correcting the defect should not prevent the exercise of the judicial discretion of this Court to admit the correction thereof *nunc pro tunc*. The order of the 9th of November last dismissing the appeal should be set aside, and having done so we will proceed to decide the appeal on the merits.

It appears from the record that Juan García Villarraza, while domiciled in Ponce, Puerto Rico, and having property there, died in April, 1899, in Pará, Brazil, where he was temporarily residing at the time.

Mr. Villarraza's first wife was Manuela Fernández and from this marriage there was born and still lives a daughter, Elvira. After Manuela's death he married Josefa Aguayo and from this marriage there was born and still lives a daughter, Graciela. Elvira asked the District Court of Ponce to declare her and her sister Graciela to be the heirs of their father. The widow Doña Josefa intervened and asked to be declared an heir entitled to the usufructory share. The court heard the parties and, based on the pleadings and the evidence in the case, the law, and the previous decisions of this Court, it declared the daughters to be the sole heirs of the father, dismissing the petition of the widow who took the present appeal.

The precise question raised herein was decided by this Court in the case of *Julbe* v. *Guzmán,* 16 P.R.R. 502. In that case, after stating the facts involved, and transcribing the sections of the Civil Code relating to the testate and the intestate successions, and after examining conflicting opinions of the commentators and the applicable jurisprudence, this Court said:

"It is a *casus omissus* in the law as it stands to-day. The Legislature had the power to determine who should be the forced heirs and who should succeed in case of intestacy. The words used are unmistakable and however inconsistent they may seem it is not for the court to substitute its will for that of the Legislature. It would be just as reasonable to take the intestate succession as expressing the real intention of the Legislature and determine the rights of forced heirs by the provisions with reference to such intestate succession. The *Siete Partidas* limited the portion of the widow to the amount it deemed necessary to her support. The Legislature of Porto Rico may have thought that the rights of the next of kin, from whom the property of a woman was likely to be derived, were to be preferred to those of a husband who is pressumed to be self-supporting. In the case under consideration to hold otherwise would be to interfere with the plainly expressed rights of a parent."

Indeed, the case was discussed in conference at great length by the Court itself which remained divided, Justices McLeary, Wolf, and Del Toro forming the majority, and Chief Justice Hernández and Justice Figueras the minority.

The decision in the *Julbe* case, *supra,* was rendered in 1910. Nearly four years later, in 1914, it was cited and applied in that of *Arandas* v. *Báez,* 20 P.R.R. 364, the following doctrine being established:

"When in accordance with the opinion that the widow is entitled to an usufructuary share in the intestate succession, which opinion prevailed until the contrary doctrine was laid down in the case of *Julbe* v. *Guzmán,* 16 P.R.R., 502, a partition is made of the inherited property in which the widow is awarded a certain sum of money in payment of said share, the said partition is not void because it is made under an error of law, nor is the award of such a nature

as to warrant the restitution of the amount paid as an exception to the general rule above stated."

The opinion of the Court was delivered by Mr. Justice Wolf, Associate Justice Del Toro concurring. Mr. Chief .Justice Hernández and Mr. Justice Aldrey concurred in the .judgment for the reasons which were stated in a concurrent ·opinion.

Eleven years later, in the case of *Cádiz* v. *Jiménez,* 30 .P.R.R. 33, the Court in a unanimous opinion said:

"The appellant contends that the acknowledged natural child can not be considered as included in the word 'children'. This case is not exactly similar to that of *Díaz* v. *Porto Rico Railway Light and Power Company,* 21 P.R.R. 73, but assuming, without holding, that it is, then we would have before us a case in which it must necessarily be concluded that the amount of the policy belonged to the heirs of the deceased, and in this case the only heir of the deceased, according to the express adjudication of the court made in a proper proceeding, is the acknowledged natural child. Cádiz Mena died intestate on July 2, 1908. The widow, therefore, was not an heir. See the case of *Julbe* v. *Guzmán,* 16 P.R.R. 502."

With his recognized ability, the distinguished counsel for the appellant herein attacks the grounds of the opinion in the *Julbe* case.

From the article on Jeremiah Sullivan Black, Chief Justice of the Supreme Court of Pennsylvania, which appears at pages 13 *et seq.,* Volume VI of "Great American Lawyers," published by William Draper Lewis, we transcribe the following:

" . . . He was one of those judges who upheld the doctrine of *stare decisis* vigorously. Thus, we find in one of the earliest cases which came before him as chief justice:

" 'Where a question has been once deliberately settled after solemn argument, it ought not to be disturbed, unless it be so manifestly erroneous that it cannot be supported without doing violence to reason and justice.

" 'It is sustained not by a current, but by a torrent of authorities. No judge who has a decent respect for the principle of *stare decisis*—that great principle which is the sheet-anchor of our jurisprudence—can deny that it is immovably established.'

"He spoke even more strongly upon this point a little later, when he said:

" ' Of course I am not saying that we must consecrate the mere blunders of those who went before us, and stumble every time we come to the place where they have stumbled. A palpable mistake, violating justice, reason, and law, must be corrected, no matter by whom it may have been made. There are cases in our books which bear such marks of haste and inattention, that they demand reconsideration. There are some which must be disregarded because they cannot be reconciled with others. There are old decisions of which the authority has become obsolete, by a total alteration in the circumstances of the country and the progress of opinion. *Tempora mutantur.* We change with the change of the times, as necessarily as we move with the motion of the earth. But in ordinary cases, to set up our mere notions above the principles which the country has been acting upon as settled and established, is to make ourselves not the ministers and agents of the law, but the masters of the law and the tyrants of the people."

As already stated, the *Julbe* case, *supra,* was decided after a thorough study by the Court. The question was fully argued and examined from all angles, with Juan Vías Ochoteco and M. Tous Soto as attorneys for the appellant and Eugenio Benítez Castaño as attorney for the appellee, and we see no justification for altering that decision after being effective for more than twenty years.

But the appellant seems to contend that this case may be decided in her favor by this Court without revoking the *Julbe* case, *supra,* inasmuch as the two cases may be distinguished on the ground that the present one deals with the inheritance of a Spanish subject, and that the Spanish law as interpreted by the Spanish courts should apply.

As is indicated by the appellee, neither the citizenship of Mr. Villarraza nor the day of his death in April, 1899, appears in the record; but supposing, without deciding, that the appellant were right in her contention that this case should be governed by the provisions of the former Spanish Civil Code as construed in Spain, we believe that such construc-

tion has not been shown to be entirely adverse to the decision of this Court in the case of *Julbe* v. *Guzmán, supra*.

In the opinion in the *Julbe* case reference is made to the diversity of opinions among the great Spanish commentators on the point under discussion. We will not unduly lengthen this opinion by reproducing the views of Scaevola and Morell which uphold the decision of this Court.

In support of her contention the appellant cites the judgment of the Supreme Court of Spain of February 8, 1892, and the decision of the General Administration of Registries of Spain of June 14, 1897.

It is true that the former, which is reprinted in 71 *Jurisprudencia Civil* 133, contains a finding (*considerando*) favorable to the appellant's contention. It says:

"Whereas the surviving husband is a coheir with the other contestants for the inheritance, the law having apportioned to him an undivided share of the estate of the deceased spouse, and succeeds the decedent whether or not the latter has made a will, apart from the fact that section 807 of the Code clearly establishes that either the widow or the widower is a forced heir; and inasmuch as Don Eusebio da Guarda has the status of a coheir, it is evident that he is included within the prohibition set forth in section 1057 of the same Code against his acting as a partitioner of his deceased wife's estate."

But, if the case is examined as a whole it is plain to be seen that it deals not with an intestate but with a testate succession and in it the Supreme Court of Spain sustained the ruling of the Territorial Court of Coruña, in which the latter court, reversing the decision of the lower court, held that the institution of voluntary testamentary proceedings was proper.

As a third ground for the appeal it was alleged that the court, by considering the widower a coheir with the children of his deceased wife's first marriage and as such included in the prohibition stated in section 1057 of the Civil Code, had violated sections 807 and 834 of said code by its

wrongful interpretation and application thereof, "since section 807 provides that the legitimate children and descendants with respect to their parents and legitimate ascendants are forced heirs. It is evident that the widower can not be considered a coheir with the children, nor is it licit to call him such because, after all, being rightfully excluded from this character, he is entitled only to what is provided by section 834, in a chapter separate from that dealing with the legitimate heirs, entitled 'Rights of the surviving spouse'; said section provides that any widower or widow who, on the death of his or her spouse is not divorced, or should be so by the fault of the deceased, shall be entitled to a portion in usufruct equal to that corresponding by way of legitime (*legítima*) to each of the legitimate children of the descendants who have not received any detriment; thus we can see that said section places said share in a category different from, if not opposite to, that of the legitimate portion, inasmuch as the latter denotes heirship and the former a very personal right which cannot be classified as succession."

And the Supreme Court answered the alleged violation with the finding that we have above transcribed.

The real point in controversy in that case was whether the widower, Eusebio da Guarda, by being a coheir with the children of the first marriage of his wife, Modesta de Goicuría y Cabrera, in her testate estate was included in the prohibition contained in section 1057, to wit: "the testator may, by an act *inter vivos* or *causa mortis* entrust the mere power of making the partition after his death to any person not a coheir." The Supreme Court held that he was.

As may be seen, the question of whether the widower was an heir in a case of intestate succession was not before the Court and this being so, the statement contained in the finding (*considerando*) of the Supreme Court, "and succeeds the decedent whether or not the latter has made a will," has no

decisive force as a conscious and firmly established legal doctrine that the widower is also an heir in the cases of intestate succession.

The decision of the General Administration of Registries of Spain which is quoted is very interesting and shows the true status of the question in Spain at the time the ruling was made, in 1897. It speaks for itself. As commentary we will limit ourselves to underscoring the portion of the reasoning to which we wish to give the most emphasis.

The following are the findings (*considerandos*) of the decision which we think it advisable to transcribe:

"Whereas the *judicial practice, on the assumption* that the intention of the legislator was to give to the widow an obligatory proportionate share in the intestate estate of the deceased when there are descendants, *has tried to supply the legislation's supposed omission,* applying *at times* the provisions of the Code that grant to the widower a proportionate share by way of legitime (*legítima*), *and attempting at other times* to broaden the provisions contained in section 932 in the sense of placing the surviving spouse in a position identical to that of the children, so that the said spouse may receive in usufruct a share equal to that which the children receive in full ownership.

"*Whereas said practice and the two methods adopted thereby to correct the deficiencies of the Code regarding the intestate succession of descendants have never had any other force than that of mere legal, private, or individual opinion, none of them can have the authority of a rule of law of general application,* and therefore the sanction of nullity provided in section 4 of the said Code is not applicable to acts already executed in accordance with the provisions which they seek to make prevalent."

That being so, we conclude that the *casus omissus* which, upon being timely invoked as in the instant case, we fully recognized with all the consequences thereof in *Julbe* v. *Guzmán, supra,* was also considered in Spain, and that neither the judicial practice nor the two methods adopted thereby for the purpose of supplying the deficiencies of the Code, may be recognized as an established rule of law that must be

followed. This was decided by the General Administration of Registries five years after the decision which the appellant invokes was rendered.

It is well also to cite the decision rendered by the U. S. Circuit Court of Appeals for the First Circuit in the case of *Villar & Co., Inc.*, v. *Conde*, 30 F. (2d) 588. It reads as follows:

"The plaintiff, Villar & Co., Inc., contends that the applicable provision of the Civil Code of Porto Rico bearing on this question, and which corresponds to article 1101 of the Spanish Civil Code, is article 1068 (Comp. St. 1911, par. 4164); that this article reads, 'Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby'; that the Supreme Court of Spain, in construing this article of the Spanish Code, has held that in an action 'for damages for which those violating their obligations are liable, it is not enough to prove the violation of the contract but it is also necessary to prove the actual and positive existence of the damages, since the latter do not always flow, nor can they be always appreciated'; and that, because of this, mere proof of the alleged contract and its breach in the instant case was not sufficient, and that to entitle Conde to substantial damages he was required to go further and show how and in what amount he was damaged. But it is a sufficient answer to this contention that the Supreme Court of Porto Rico in July, 1915, nearly 14 years ago, in *Hardouin* v. *Krajawsky-Pesant Co.*, 22 Porto Rico, 641, in construing this article of the Code held that 'the measure of damages sustained by reason of failure on the part of an employer to comply with a contract for services is, prima facie, the compensation stipulated in the contract, subject to reduction upon proof by the defendant as to the amount the employee did gain or could have gained during the time the contract remained in force'; that the construction of this article of the Code is a matter of local law; and that this construction, after 14 years of recognition, having been now reaffirmed by the Supreme Court, this court will not interfere. It surely is not clearly wrong."

For the reasons above stated the judgment appealed from must be affirmed.

Messrs. Justices Aldrey and Hutchison dissented in regard to the confirmation of the decision in the case of *Julbe* v. *Guzmán, supra.*